**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | | |
|---|---|---|
| TOM AIKENS, et al., | ) | |
| | ) | |
| Plaintiffs/Counterdefendants | ) | Case No. CV-07-138-E-EJL-LMB |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| U.S. TRANSFORMER, INC., et al. | ) | |
| | ) | |
| Defendants/Counterclaimants | ) | |
| ——————————————————— | ) | |

Currently pending before the Court is Defendants' Motion for Judgment on the Pleadings (Docket No. 26) on referral from District Judge Edward J. Lodge. *See Scheduling Order* (Docket No. 23). Having carefully reviewed the record, read the briefs of counsel, considered oral arguments, and otherwise being fully advised, the following Report and Recommendation is entered. For purposes of this Report and Recommendation, Plaintiffs' material allegations have been accepted as true, and their pleadings have been construed in the light most favorable to them as required by applicable legal standards.

**I.**

**BACKGROUND**

**A.     Parties**

This action was filed on March 24, 2007. *See Complaint* (Docket No. 1). Plaintiffs are former employees of Defendant U.S. Transformer West, Inc. ("U.S.T. West"). *Id*. at ¶ 1 (Docket

**REPORT AND RECOMMENDATION- 1**

No. 1). Defendant U.S.T. West is related by common ownership to U.S. Transformer, Inc. ("U.S.T.") and U.S. Transformer East, Inc. ("U.S.T. East"). *Id.* at ¶ 2.

The U.S.T. West plant ceased operations on March 26, 2003. *Id.* at ¶ 53. Virginia Transformer purchased U.S.T. West's assets on April 10, 2003. *Id.* at ¶ 43. A portion of the proceeds from this sale was directed to U.S.T. East. *Id.* at ¶ 54. Defendant Jordan Transformer purchased the business of U.S.T. East on September 22, 2004. *Id.* at ¶ 30. Plaintiffs allege that Jordan Transformer was on notice of Plaintiffs' claims at the time of the purchase and operates substantially the same business as U.S.T. East. *Id.* at ¶ 31.

**B.    Allegations**

Plaintiffs' claims are based upon three sets of factual allegations. The first set of allegations relates to sums withheld from Plaintiffs' pay for the purpose of paying the Plaintiffs' portion of health care premium payments ("Health Care Premium Payments"). The second set of allegations relates to sums withheld from Plaintiffs' pay, ostensibly to fund an employee stock benefit plan ("Employee Stock Benefit Plan"). The third set of allegations relates to allegedly fraudulent statements made to Plaintiffs' counsel in the context of settlement negotiations ("Settlement Negotiations").

**Health Care Premium Payments**. The parties do not dispute that U.S.T. sponsored a health plan ("U.S.T. Health Plan") governed by ERISA.[1] *Complaint*, ¶ 3 (Docket No. 1); *Answer and Counterclaim*, ¶ 4 (Docket No. 17). Both U.S.T. West and U.S.T. East participated in the U.S.T. Health Plan. *Answer and Counterclaim*, ¶ 4 (Docket No. 17). Defendants claim that the U.S.T. Health Plan was terminated on April 15, 2003. *Id.*

---

[1] ERISA coverage was also acknowledged at the hearing on February 5, 2007.

**REPORT AND RECOMMENDATION- 2**

In their Complaint, Plaintiffs allege that, prior to plan termination, some of them agreed to have U.S.T. West withhold a portion of their pay to pay for the employee portion of the cost of health care coverage under the U.S.T. Plan. *Complaint*, ¶ 47 (Docket No. 1). Plaintiffs further allege that such amounts were withheld from their pay in February and March 2003; nevertheless, these Plaintiffs' health care premiums were not paid, the health plan was under-funded, and Plaintiffs' health benefit claims were denied. *Id.* at ¶¶ 47-55 (Docket No. 1).

Plaintiffs further allege that amounts corresponding to the payroll deductions for the months of February and March 2003 were transferred from U.S.T. West to U.S.T. East. *Id.* at ¶ 49. Effective February 1, 2003, U.S.T. purchased a group health policy from Blue Cross Blue Shield of Minnesota to cover only U.S.T. East employees and their beneficiaries. *Id.* at ¶ 51.

**Employee Stock Benefit Plan**. On September 30, 2002, the U.S.T. West employees received a memorandum indicating they would experience a 7% reduction in pay effective that day. *Id*. at ¶ 37; *Answer*, Ex. A (Docket No. 17) ("September 30, 2002 Memorandum" or "Memorandum"). The employees were informed that an amount equal to the reduction in salary would "go into" an "employee stock incentive plan" subject to a vesting schedule. *Answer*, Ex. A (Docket No. 17). Plaintiffs allege that they did not receive stock pursuant to the plan, did not receive a further-detailed written agreement, and their rights as shareholders were not recognized. *Complaint*, ¶¶ 37-44 (Docket No. 1).

**Settlement Negotiations**. On May 22, 2004, Plaintiffs, except for Plaintiff David Anthony Olson ("Olson"), initiated a lawsuit against U.S.T. West and U.S.T. East, among others, in Idaho state court. *See* Ex. B, Affidavit of Ruth S. Marcott in Support of Motion to Dismiss ("First Marcott Affidavit") (Docket No. 26-3). On August 31, 2004, Defendant, Kay L.

**REPORT AND RECOMMENDATION- 3**

Wallerich ("Wallerich), a partner with the Defendant law firm, Farrish Johnson Law Office, Chtd.("Farrish Johnson"), wrote to Plaintiffs' counsel on behalf of U.S.T. East and indicated that U.S.T. East was considering selling its assets to a third party.  *Complaint*, ¶ 58 (Docket No. 1). This letter appears to have initiated settlement negotiations between the parties.

Plaintiffs allege that Wallerich represented to Plaintiffs' counsel that the anticipated sale of U.S.T. East would not take place until Plaintiffs' claims were settled.  *Id.* at ¶59.  Plaintiffs further allege that they relied upon these representations to their detriment, as they did not take further action to pursue their claims against U.S.T.  *Id.* at ¶ 60.  On September 22, 2004, U.S.T. East was sold to Jordan Transformer before Plaintiffs' claims had been settled.  *Id.* at ¶¶ 56, 63. Moreover, Plaintiffs allege that approximately $160,000 in proceeds from the sale were diverted to Wallerich's trust account "for the ostensible purpose . . . of satisfying the Plaintiffs' claims." *Id.* at ¶ 62.  Plaintiffs' claims remain unpaid.  *Id.* at ¶ 64.

## II.

## PROCEDURAL HISTORY

Plaintiffs, except for David Olson, brought a civil action in Idaho State District Court, Bannock County Case No. CV-2003-2432-OC ("Aikens I") on May 22, 2003.  Ex. B, First Marcott Affidavit (Docket No. 26-3).  On September 22, 2005, Plaintiffs, again except for Olson, brought a second civil action in the same Idaho State District Court, Case No. CV-05-3703-OC ("Aikens II").  Ex. C, First Marcott Affidavit (Docket No. 26-3).

In Aikens I, the named Defendants were U.S.T, U.S.T. East, U.S.T. West, Ken Kampshoff, Gary Vickmark, and Elizabeth Vickmark (also referred to as "Lisbeth Leagjeld"). Ex. B, First Marcott Aff. (Docket No. 26-3).  The allegations in Aikens I include virtually the

**REPORT AND RECOMMENDATION- 4**

same allegations regarding the Health Care Premium Payments and Employee Stock Benefit Plan at issue in this federal court lawsuit. *Id.* at ¶¶ 17-20, 26. Based on these allegations, Plaintiffs brought state claims for breach of employment contract, *Id.* at ¶¶ 30-35; unjust enrichment, *Id.* at ¶¶ 36-39; fraud and misrepresentation, *Id.* at ¶¶ 40-43; breach of duty of good faith and fair dealing, *Id.* at ¶¶ 44-47; and civil racketeering, *Id.* at ¶¶ 48-50.

In Aikens II, a second lawsuit was filed against U.S.T., U.S.T. East, Mark Kragthorpe, Cinda Smith, Elizabeth Vickmark, Ken Kampshoff, Farrish Johnson, Kay Wallerich, and Jordan Transformer. *Ex. C, First Marcott Affidavit* (Docket No. 26-3). The allegations in Aikens II include virtually the same allegations surrounding the alleged settlement negotiations at issue in the instant federal court lawsuit. *Id.* at ¶¶ 31-35. Based on these allegations, Plaintiffs alleged state claims of fraudulent transfer, *Id.* at ¶¶ 37-40, and fraud and misrepresentation, *Id.* at ¶¶ 41-44.

These actions were later consolidated. *See Ex. F, First Marcott Affidavit* (Docket No. 26-3). After consolidation, Plaintiff David Olson, a non-party in the state court proceedings, submitted an Affidavit to the state court. *See Ex. A, Supplemental Affidavit of Ruth S. Marcott in Support of Motion to Dismiss* ("Second Marcott Affidavit") (Docket No. 30-2). In that Affidavit, dated October 19, 2006, Olson described medical expenses he incurred when he was a U.S.T. West employee and how his claim for benefits under the U.S.T. Plan was denied, even though his employee contribution to premium payments had been withheld from his pay. *Id.* at ¶¶ 6, 8-10.

**REPORT AND RECOMMENDATION- 5**

# III.

## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

### A.    Judgment on the Pleadings Standard

Pursuant to Rule 12(c), "[a]fter the pleadings are closed but within such time as not to delay trial, any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A Rule 12(c) motion to dismiss is "functionally identical" to a Rule 12(b) motion, and the standard of review is the same.  *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  Thus, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

When analyzing a motion to dismiss under Rule 12(c), a court must accept as true the material allegations contained in the non-moving party's pleading and construe the pleadings in the light most favorable to that party.  *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir. 1990).  "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to a judgment as a matter of law."  *Id.*

### B.    Evidence That May Be Considered in a Motion for Judgment on the Pleadings

In the case pending here, Defendants support their motion with two affidavits, the First Marcott Affidavit (Docket No. 26-3), with ten exhibits attached, and the Second Marcott Affidavit (Docket No. 30-2), with two exhibits attached.  Plaintiffs argue the exhibits  "go beyond the pleadings, attachments thereto and documents incorporated by reference therein" and should not be considered in a Rule 12(c) motion without converting the motion for judgment on

**REPORT AND RECOMMENDATION- 6**

the pleadings into a Rule 56 motion for summary judgment.  *Response to Motion to Dismiss*, p. 1 (Docket No. 28).  Defendants argue that the documents fall into a limited class of material that may be considered in a motion to dismiss on the pleadings.  *Defendants/ Counterclaimants' Reply Memorandum*, p. 1 (Docket No. 30).

When deciding a motion for judgment on the pleadings, a court may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  A fact may be subject to judicial notice if it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A court must take judicial notice upon request if supplied with the necessary information.  Fed. R. Evid. 201(d).

The parties do not dispute that Exhibit A to the first Marcott Affidavit, also Exhibit A to Defendants' Answer, should be considered as incorporated by reference in the Complaint.  The general rule is "that courts, when ruling on a motion to dismiss, must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint."  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  However, there is an exception to this rule allowing courts "to take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [complaint].'"  *Id.* (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.

**REPORT AND RECOMMENDATION- 7**

1999).  This exception clearly applies here, as the September 30, 2002 Memorandum is referenced in the Complaint and the parties do not dispute its authenticity.

After considering applicable law and the documents in question, I will take judicial notice of the complaints and Plaintiff Olson's affidavit filed in state court.  *See* Exs. B and C, First Marcott Affidavit (Docket No. 26-3); Ex. A to the Second Marcott Affidavit (Docket No. 30-2).  Judicial notice of these documents will be taken only for the purpose of establishing what was represented to the state court and when.  *See MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (holding court may take judicial notice that party made statement in court document without considering truth or falsity of statement itself).

# IV.

# ANALYSIS

Defendants raise five central issues, including whether: (1) the Employee Stock Benefit Plan is governed by ERISA; (2) the ERISA claims are time-barred; (3) Plaintiffs state a claim against Defendants Wallerich, Farrish Johnson, and Virgina Transformer for ERISA breach of fiduciary duty; (4) Plaintiffs have stated a claim for equitable relief pursuant to 29 U.S.C. § 1132(a)(3); and (5) Plaintiffs have stated a RICO claim.

**A.    The Employee Stock Benefit Plan Does Not Constitute an ERISA Plan.**

Defendants argue that the claims arising from the Employee Stock Benefit Plan must be dismissed, because the September 30, 2002 Memorandum does not constitute a plan governed by ERISA and, even if it did, no ERISA rights vested under the plan.  *Defendants' Memorandum in Support of Motion to Dismiss*, p. 12 (Docket No. 26-2).  As explained more fully below, the Memorandum and the allegations related thereto are sufficient to withstand judgment on the

**REPORT AND RECOMMENDATION- 8**

pleadings as to whether a "plan" existed.  However, as described in the Memorandum, the alleged plan is not be covered by ERISA and, even if it was, Plaintiffs lack vested rights under the plan.

> **1.      The September 30, 2002 Memorandum is Evidence of an Established Plan.**

The informal nature of the September 30, 2002 Memorandum, including the reference to further details forthcoming, does not preclude an ultimate finding that an ERISA plan was established as alleged in the Complaint.  ERISA governs any "employee benefit plan if it is established or maintained . . . by any employer in commerce or in any industry or activity affecting commerce."  29 U.S.C. § 1003(a).  The term "employee benefit plan" is defined under the statute as "[1] an employee welfare benefit plan or [2] an employee pension benefit plan or [3] a plan which is both an employee welfare benefit plan and an employee pension benefit plan."  29 U.S.C. § 1002(3).

Before ERISA can apply, the *existence* of a *plan* must be established.  *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 11-12 (1987) (emphasis added).  The existence of a plan does not depend on formal requirements or even a written document.  "Although ERISA contains numerous requirements that a plan must adhere to-- a written instrument, named fiduciaries, public reports, etc. . . . these requirements are not part of the definition of 'plan' . . . [and] [f]ailure to meet these requirements does not exempt [an employer] from coverage by ERISA."  *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503 (9th Cir. 1985).

Determining whether a plan has been established is an issue of fact.  "A pension benefit plan may be created even without a formal intentional plan adoption if 'from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries,

**REPORT AND RECOMMENDATION- 9**

the source of financing, and procedures for receiving benefits.'" *Carver v. Westinghouse Hanford Co.*, 951 F.2d 1083, 1086 (9th Cir. 1991), *cert. denied*, 505 U.S. 1222 (1992) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (*en banc*)).  However, *intent* to create a plan alone is not sufficient to demonstrate a plan has been established:

> A decision to extend benefits is not the establishment of a plan or program.  Acts or even events that record, exemplify or implement the decision will be direct or circumstantial evidence that the decision has become reality . . . assuring employees that a plan or program exists [for example]- but it is the reality of a plan, fund, or program and not the decision to extend certain benefits that is determinative.

*Id.* (quoting *Donovan,* 688 F.2d at 1373).

In short, whether a plan exists to pay employees in stock is an issue of fact.  At this stage in the proceedings, the September 30, 2002 Memorandum and allegations regarding withheld pay are sufficient to uphold Plaintiffs' claim that a plan existed.

### 2.    The Alleged Stock Benefit Plan is Not Covered by ERISA.

Plaintiffs concede that the Employee Stock Benefit Plan is not an "employee welfare benefit plan" but argue that it is covered by ERISA as an "employee pension benefit plan." *Response to Motion to Dismiss*, p. 12 (Docket No. 28).  Under ERISA, a plan may constitute an "employee pension benefit plan" if it either: (1) provides retirement income to employees or (2) allows employees to defer income for periods extending to the termination of covered employment or beyond.  29 U.S.C. § 1002(2)(A).[2]  As explained more fully below, plans that

---

[2]  Specifically, the statute defines "employee pension benefit plan" as:

[A]ny plan, fund, or program . . . established or maintained by an employer . . . to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program - -

**REPORT AND RECOMMENDATION- 10**

result in deferred income are deemed "employee pension benefit plans" only when such plans provide for a systematic deferral of income for periods extending to the termination of covered employment or beyond.

The Department of Labor ("DOL") has promulgated regulations regarding the statutory term "employee pension benefit plan."  These regulations exclude from the terms "employee pension benefit plan" and "pension plan" certain severance pay plans and bonus programs.  29 C.F.R. § 2510.3-2.  The exclusion for bonus payments applies unless such payments are "systematically deferred to the termination of covered employment or beyond."  29 C.F.R. § 2510.3.2(C).[3]

Courts have applied these regulations to exclude from ERISA coverage certain bonus programs, including stock option programs, that provide deferred income provided that the program does not systematically defer income to retirement or termination.  For example, the

---

(A) provides retirement income to employees, or

(B) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A).

[3]  Specifically, the regulation excludes from the definition:

[P]ayments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income for employees.

29 C.F.R. § 2510.3-2(c).

**REPORT AND RECOMMENDATION- 11**

Fifth Circuit had the opportunity to consider a program awarding employees bonuses in the form of an assignment of a royalty interest in an oil drilling prospect. *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 574-576 (5th Cir. 1980). The Fifth Circuit determined the bonus plan was not an employee pension benefit plan, because the bonuses were awarded in addition to regular compensation and were meant to award employees with present benefits, even though the employee did not receive payment until the drilling prospect actually began to produce and payments continued with production, an event not connected to employment. *Id.* Rather than rely upon the regulation alone, the Fifth Circuit reasoned, "Under the statutory definition [of employee pension benefit plan] . . . , the mere fact that some payments under a plan may be made after an employee has retired or left the company does not result in ERISA coverage." *Id.* at 575.

Similarly, the Tenth Circuit has found an employee benefit plan that provided an employee with an account for bonus allocations subject to a vesting schedule did not constitute an ERISA plan, because the plan permitted an employee to withdraw the vested portion of allocations at any time during the course of employment and did not systematically defer payment to termination. *McKinsey v. Sentry Ins.*, 986 F.2d 401, 405-406 (10th Cir. 1993). In addition, the Fourth Circuit has held that certain benefits paid employees upon termination and tied to the amount of business conducted in the last year prior to termination did not constitute a pension plan governed by ERISA, reasoning that the payments were, in effect, "a final form of compensation for the business created by the [employee]" and did "not constitute retirement income." *Fraver v. North Carolina Farm Bureau Mut. Ins.* Co., 801 F.2d 675, 677-78 (4th Cir. 1986), *cert. denied,* 480 U.S. 919 (1986); *see also Kaelin v. Tenneco*, 28 F.Supp.2d 478, 486

**REPORT AND RECOMMENDATION- 12**

(N.D. Ill. 1998) (holding stock options provided to key employees not covered by ERISA because they were "not specifically designed to provide retirement income and did not systematically defer income past the termination of employment").  Together, these cases show that the deferral of some income past termination of covered employment is not enough to trigger ERISA coverage.  In order to constitute an ERISA "pension benefit plan," the plan must be designed to provide retirement income, typically through a systematic deferral of income past termination of covered employment.

In the instant case, the Employee Stock Benefit Plan, as described in the March 30, 2002 Memorandum and the Complaint, cannot be deemed an "employee pension benefit plan" under ERISA.  According to the September 30, 2002 Memorandum, the salaried employees would gain access to the stock-purchase funds according to a vesting schedule.  *Ex. A, First Marcott Affidavit* (Docket No. 17).  The vesting schedule allowed employees to gain access to ten percent of the funds after one year with full vesting after 36 months.  *Id.*  Therefore, while it is entirely possible that an employee could leave his or her investment in the Stock Benefit Plan and receive deferred compensation "extending to the termination of covered employment or beyond," the language of the Memorandum precludes a finding that the Employee Stock Benefit Plan was established or designed to provide for the systematic deferral of income.  As the Memorandum describes, the Employee Stock Benefit Plan was intended as an additional source of compensation offered to employees in lieu of salary in an effort to cut costs and buoy the company through a "slump in the marketplace."  *Id*.  Under these circumstances, the alleged Employee Stock Benefit Plan is more a "payroll practice" rather than an "employee pension benefit plan."

**REPORT AND RECOMMENDATION- 13**

DOL regulations exclude from the terms "employee welfare benefit plan" and "employee pension benefit plans" certain "payroll practices."  29 C.F.R. § 2510.3-1(b).  These include "payment by an employer of compensation on account of work performed by an employee," as well as overtime pay and shift, holiday, and weekend premiums.  29 C.F.R. § 2510.3-1(b)(1).[4] "Payroll practices" are distinguished from other payments covered by ERISA, because they "require disbursements of funds easily analogized to ordinary wages, and the payments involved invariably take place during the term of employment."  *Scott v. Gulf Oil Corp.*, 754 F.2d at 1503.

In the instant case, the stock was offered in lieu of a full salary, the amount was directly tied to the employee's salary, and contributions to the plan would end upon termination from employment.  Under such circumstances, the Employee Stock Benefit Plan is more akin to a payroll practice than a plan designed to provide retirement income to employees.  *See Bassiri v. Xerox Corp.*, 463 F.3d 927, 932 (9th Cir. 2006) (holding partial payment of salary during disability outside scope of ERISA, because payment practice was more akin to salary: "The payments come in regular paychecks, in an amount tied to the employee's salary and not the variable performance of a fund . . . [and] end upon termination.").

Nevertheless, Plaintiffs argue that the Employee Stock Benefit Plan is an ERISA pension plan because there is a possibility that the plan would result in the deferral of income to termination and beyond.  In support of this argument, Plaintiffs cite to three Department of Labor ("DOL") Advisory Opinions, 98-02A (March 6, 1998), 84-12A (February 23, 1984), and 81-74A (September 29, 1981).  All three of these Advisory Opinions outline essentially the same general

---

[4]  Also excluded as "payroll practices" are payments of compensation for periods when the employee is out sick or on vacation, provided that such payments are made from the employer's general assets.  *See* 29 C.F.R. § 2510.3-1(b).

**REPORT AND RECOMMENDATION- 14**

rule: a plan that does not condition distribution of funds based upon retirement or termination of employment but is triggered solely by the passage of time is not an ERISA pension benefit plan; however, such a plan could constitute an ERISA pension plan as a result of surrounding circumstances, i.e. if the operation or administration of the plan resulted in the provision of retirement income or deferred income past the termination of covered employment.  *See* Opinion No. 98-02A, 1998 WL 103654, *2 (E.R.I.S.A.) (advising ERISA did not cover bonus plan because plan did not "expressly condition distribution of bonus payment upon termination of employment or retirement"); Opinion No. 84-12A, 1984 WL 23427, *3 (E.R.I.S.A.) (advising ERISA did not cover phantom stock compensation plan because plan did not "condition distribution of the amount deferred upon termination of employment, retirement, or any other circumstances other than the fixed passage of time"); Opinion No. 81-74A, 1981 WL 17797 , * 3 (E.R.I.S.A.) (advising that ERISA did not cover bonus plan because plan did not "condition distribution of the bonus payments upon termination of employment or retirement").  *See also* Opinion No. 79-15A, 1979 WL 6953, *2 (E.R.I.S.A.) (March 12, 1979) (advising stock incentive program not employee pension benefit plan under ERISA where from date of stock issuance grantees have all rights of shareholders except certificates held by employer until restrictions lapse); *cf.* Opinion No. 80-29A, *2 (E.R.I.S.A.) (May 12, 1980) (advising that employee stock incentive program constituted "employee pension benefit plan" where restrictions on stock effectively deprived participants of significant portion of ownership benefits until retirement).

**REPORT AND RECOMMENDATION- 15**

These D.O.L. Advisory Opinions are not binding[5] on the Court, but, in fact, they actually support Defendants' argument for judgment on the pleadings.  Because the September 30, 2002 Memorandum provides that the employees would have access to the funds according to a vesting schedule, rather than termination of employment or retirement, the plan is not an ERISA pension benefit plan.  Moreover, while the surrounding circumstances could suggest the creation of an ERISA pension benefit plan, the Memorandum precludes such a finding here, because it makes clear that the plan was intended to provide compensation for current work, provided for full ownership within three years, and was developed in the interest of cutting costs - not to provide employees' with retirement income.  Because the Employee Stock Benefit Plan is not an "employee pension benefit plan," ERISA does not apply to the Employee Stock Benefit Plan allegations.

### 3.    Plaintiffs Lack Vested Rights Under the Alleged Employee Stock Benefit Plan.

Even if ERISA applied to Plaintiffs' Employee Stock Benefit Plan as alleged, Plaintiffs have no vested rights to such stock.  According to the September 30, 2002 Memorandum, the Employee Stock Benefit Plan was effective on that date and employees would be ten percent vested in one year, i.e., September 30, 2003.  However, U.S.T. West's assets were sold on April 10, 2003, *Complaint*, ¶ 43 (Docket No. 1), before any such rights had vested.

Plaintiffs argue that the wording of the September 30, 2002 Memorandum regarding vesting is ambiguous and could be interpreted to include pre-plan service.  *Response to Motion to Dismiss*, p. 15 (Docket No. 28).  According to this argument, the vesting schedule could apply

---

[5]  *See Patelco Credit Union v. Sahni*, 262 F.3d 897, 908 (9th Cir. 2001) (quoting ERISA Procedure, 76-1, § 10, 41 Fed.Reg. 36281 (Aug. 27, 1976)).

**REPORT AND RECOMMENDATION- 16**

to the period of time the employee worked for U.S.T. West rather than the amount of time the employee held the stock or the service performed after the plan was in place.  *Id.*  This interpretation of the Memorandum does not satisfy the Rule 12(c) standard.  The Memorandum clearly refers to service *after* the stock has been received and makes no reference whatsoever to pre-plan service.

Plaintiffs also argue that the stock purchases described in the September 30, 2002 Memorandum constitute nonforfeitable, employee contributions to the plan.  *Id.*  Again, Plaintiffs' interpretation of the September 30, 2002 Memorandum does not satisfy Rule 12(c) requirements.  The Memorandum describes a mandated plan through which U.S. West would make contributions of stock on behalf of the employees to make up for a seven percent salary cut.  Such contributions cannot be deemed employee contributions as a matter of law.

In sum, even if the Employee Stock Benefit Plan was governed by ERISA, Plaintiffs did not have vested rights in the stock.  Therefore, Plaintiffs' allegations cannot support a claim for benefits due under the Employee Stock Benefit Plan pursuant to 29 U.S.C. § 1132(a)(1)(B).

**B.    Plaintiffs' Claim for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B) Are Not Time-Barred.**

Plaintiffs rely upon the allegations regarding Health Care Premium Payments and the Employee Stock Benefit Plan to support claims for benefits under 29 U.S.C. § 1132(a)(1)(B).  While the allegations regarding the Employee Stock Benefit Plan cannot sustain an ERISA claim for relief as a matter of law, the claims for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) were timely filed.

**REPORT AND RECOMMENDATION- 17**

Congress did not provide a specific limitations period for actions to recover benefits under 29 U.S.C. § 1132(a)(1)(B). *Flanagan v. Inland Empire Elec. Workers Pension Plan & Trust,* 3 F.3d 1246, 1252 (9th Cir. 1993). Therefore, the courts must apply the most analogous state statute applicable to the claims. *Id.*; *Wilson v. Garcia,* 471 U.S. 261, 266-67 (1942) ("When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so.") Characterizing the nature of the claim is a matter of federal law. *Wilson,* 471 U.S. at 268-69.

In the instant case, the most analogous state limitations period applicable to the claim for benefits is the five-year statute of limitations applicable to actions on a written contract. *See* I.C. § 5-216. In support of their ERISA claims for benefits and equitable relief, Plaintiffs rely on their allegations regarding withheld Health Care Premium Payments and the Employee Stock Benefit Plan. *Complaint,* ¶¶ 66-69 (Docket No. 1). Because these claims are based on what are alleged to be written agreements, the most analogous state statute of limitations is Idaho's five-year limitations period applicable to claims based on a written contract.

This conclusion is consistent with Ninth Circuit case law and applicable legislative history. First, there are ample Ninth Circuit cases applying breach of contract statutes of limitations to ERISA claims for benefits. *See, e.g., Flanagan,* 3 F.3d at 1252 (9th Cir. 1993) (applying Washington statute of limitations); *Trustees for Alaska Laborers-Construction Industry Health and Security Fund v. Ferrell*, 812 F.2d 512, 517 (9th Cir. 1987) (applying Alaska statute of limitations); *Hawaii Carpenters Trust Funds v. Waiola Carpenter Shop. Inc.*, 823 F.2d 289, 298 (9th Cir. 1987) (applying Hawaii statute of limitations). Second, as the Tenth

**REPORT AND RECOMMENDATION- 18**

Circuit has described, the legislative history suggests that Congress intended a breach of contract limitations period to apply.  "The legislative history suggests Congress intended actions brought under ERISA to be interpreted by the courts 'in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947.'" *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197 (10th Cir. 1990) (citations omitted).

Nevertheless, Defendants argue that the three-year statute of limitations applicable to actions "upon a liability created by statute" should apply.  I.C. § 5-218.  In support of this argument, Defendants cite *Fallin v. Commonwealth Ind., Inc. Cash Balance Plan*, 521 F. Supp.2d 592 (W.D. Ky 2007).  However, *Fallin* can be distinguished from the instant case.  In *Fallin*, the Plaintiffs alleged that certain amendments to their retirement benefit plan improperly reduced the amounts to which they were entitled under the original plan.  *Id.*  As stated in *Fallin*, "Plaintiffs' complaint expressly alleges that Defendants' plan amendments violate various ERISA provisions.  Thus, Plaintiffs' complaint arises more specifically from ERISA's statutory protections rather than from an independent promise or contract."  *Id.*  In contrast, in the instant case, Plaintiffs' 29 U.S.C. § 1132(a)(1)(B) claim is based upon the terms of the alleged ERISA plans rather than separate ERISA requirements.

Furthermore, there are at least three reported federal court decisions that specifically consider and reject the idea that a state statute of limitations period applicable to claims arising from a federal statute should apply to ERISA claims.  *See Schroeder v. Phillips Petroleum Co.,* 970 F.2d 419, 420 (8th Cir. 1992); *Trustees of Wyoming Laborers Health and Welfare Plan v. Morgen & Oswood Constr. Co., Inc. of Wyoming*, 850 F.2d 613, 619 (10th Cir. 1988); *Trustees*

**REPORT AND RECOMMENDATION- 19**

*of Carpenters and Millwrights Health Ben. Trust Fund v. Lillard & Clark Constr. Co., Inc*., 780 F. Supp. 738, 741 (D. Colo. 1990).

Applying the five-year statute of limitations from I.C. § 5-216, it is clear that Plaintiffs' 29 U.S.C. § 1132(a)(1)(B) claims are timely.  Federal law determines the accrual of an ERISA cause of action.  *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program*, 222 F.3d 643, 649 (9th Cir. 2000).  An ERISA cause of action under 29 U.S.C. § 501(a)(1)(B) accrues at the time benefits were actually denied or when Plaintiffs had reason to know that their benefits had been denied.  *Id.*  The instant lawsuit was filed in federal court on March 24, 2007, and the conduct alleged as part of the Health Care Premium Payments and Employee Stock Benefit Plan occurred after March 24, 2002.  *See Complaint* (Docket No. 1).  Therefore, Plaintiffs' claims for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) are timely filed.

## C.    Plaintiffs' Claims for Breach of ERISA Fiduciary Duties Pursuant to 29 U.S.C. § 1132(a)(2) Are Time-Barred.

Defendants argue that breach of fiduciary duty claims based upon the allegations regarding Health Care Premium Payments and the Employee Stock Benefit Plan should be dismissed, because they are time-barred.  Defendants also argue that the claims against Wallerich, Farrish Johnson and Virginia Transformer should be dismissed, because these Defendants are not ERISA fiduciaries.  I agree and, for the reasons that follow, find that Plaintiffs' allegations do not support their claims for breach of ERISA fiduciary duty.

### 1.    The Statute of Limitations Applicable to ERISA Claims Pursuant to 29 U.S.C. § 1132(a)(2).

ERISA provides for either a three or six-year statute of limitation applicable to fiduciary duty claims depending on the facts of the case.  *See* 29 U.S.C. § 1113.  The statute states:

**REPORT AND RECOMMENDATION- 20**

> No action may be commenced . . . with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part . . . after the earlier of -
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced no later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.  The three-year statute of limitations is triggered upon "knowledge of the transaction that constituted the alleged violation, not by . . . knowledge of the law." *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985).

In applying the ERISA statute of limitations, a court must conduct a two-part inquiry and determine: (1) when the alleged violations occurred and (2) when plaintiff had actual knowledge of the violation.  *Ziegler v. Connecticut Gen. Life Ins., Co.*, 916 F.2d 548, 550 (9th Cir. 1990).  It is "unnecessary to await an actual injury or harm before the ERISA action . . .  [becomes] actionable."  *Id*.

Here, the allegations of wrong-doing related to the Health Care Premium Payments and Employee Stock Benefit Plan occurred within the six years preceding this lawsuit, filed on March 24, 2007.  However, Plaintiffs had knowledge of these alleged breaches or violations since at least May 22, 2003 when Plaintiffs filed the Aikens I lawsuit.  In addition, there are no relevant allegations of fraud or concealment.  Therefore, the statute of limitations began to run as to these allegations from at least May 22, 2003, rendering the ERISA breach of fiduciary duty claims stale after May 22, 2006.

**REPORT AND RECOMMENDATION- 21**

Plaintiffs allege that a longer six-year of statute of limitations applies due to Defendants' alleged "fraud or concealment."  Nevertheless, the phrase "fraud or concealment" requires "specific evidence of fraudulent activity or concealment."  *Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1401 (9th Cir. 1995).  More specifically, Plaintiffs must produce evidence of "affirmative steps . . . to conceal any alleged fiduciary breaches."  *Id.*  The phrase "fraud or concealment" refers to "steps taken by the defendant to hide the fact of the breach."  *Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir. 1990) (holding fraud or concealment exception applies only when ERISA fiduciary either "misrepresent[s] the significance of facts the beneficiary is aware of (fraud) or ... hid[es] facts so that the beneficiary never becomes aware of them (concealment).")

The only allegation of fraud or concealment in the Complaint arises from the Settlement Negotiation allegations.  However, the misrepresentation alleged in that context was not concealed or covered up in any fashion.  Rather, the alleged wrong-doing occurred when U.S.T. East's assets were sold despite the alleged representation that Plaintiffs' claims would be settled before the sale.  There are no allegations in the Complaint that such actions were concealed or covered up in any fashion.  Therefore, the three-year statute of limitations applies to Plaintiffs' claims for breach of fiduciary duty.

Plaintiffs argue that the statute of limitations did not run against Plaintiff David Olson's claims, because he is the only Plaintiff who was not a party to the state court proceedings. Therefore, while the other Plaintiffs stated their knowledge of the alleged wrongdoing in statements made in the state lawsuit, Defendant Olson did not.

**REPORT AND RECOMMENDATION- 22**

Defendant submits an affidavit from Olson filed in the state court proceedings for the purpose of demonstrating his knowledge of the acts underlying the claim.  *Ex. A, Second Marcott Affidavit* (Docket No. 30-2).  However, Olson's Affidavit does not establish when he actually knew about Defendants' alleged failure to pay his health care premiums.  The affidavit states that he was admitted to the hospital before the U.S.T. plant in Pocatello was closed and that he was in a coma for 30 days.  *Id.* at ¶ 8.  In addition, Olson avers that he did not receive any bills until after he was released from the hospital.  *Id.* at ¶ 10.  The Affidavit does not contain a definitive statement regarding specifically when Olson learned about his claims, and the Affidavit itself was not made until October 19, 2007.  Therefore, the Olson Affidavit does not provide sufficient evidence to establish as a matter of law that he knew about the alleged actions underlying the breach of fiduciary duty claims prior to March 24, 2004, three years preceding the filing of the Complaint.

In short, the three-year statute of limitations applies to Plaintiffs' breach of ERISA fiduciary duty claims.  As a result, Plaintiffs' fiduciary duty claims arising from the Health Care Premium Payments and Stock Plan Allegations are time-barred except for those of Plaintiff David Olson.  Therefore, judgment on the pleadings as to the Plaintiffs' breach of fiduciary duty claims arising from the Health Care Premium Payments and the Employee Stock Benefit Plan should be granted to Defendants against all Plaintiffs, except as to the claims of Plaintiff Olson, who may be able to prove a set of facts that would entitle him to relief.

**REPORT AND RECOMMENDATION- 23**

**2.    Plaintiffs' Alleged Facts Do Not Support ERISA Claims Against Wallerich, Farrish Johnson, or Jordan Transformer.**

Even when analyzed liberally, Plaintiffs' allegations do not support a claim for relief against Defendants Wallerich, Farrish Johnson, or Jordan Transformer for breach of ERISA fiduciary duty.

To determine a person's fiduciary status, a court must look to the person's actions as well as the assets allegedly controlled.  "ERISA permits suits for breach of fiduciary duty only against persons who act as fiduciaries with respect to a plan or trust covered by ERISA." *Acosta v. Pacific Enterprises*, 950 F.2d 611, 617 (9th Cir. 1991).  As the statute provides, a "person is a fiduciary with respect to a plan," and therefore subject to ERISA fiduciary duties, "to the extent" that he or she "exercises any discretionary authority or discretionary control respecting management" of the plan, or "has any discretionary authority or discretionary responsibility in the administration" of the plan.  29 U.S.C. § 1002(21)(A).  Thus, ERISA's definition has been deemed "functional" and  "makes clear that a person's actions, not the official designation of his role, determine whether he enjoys fiduciary status." *Id.*  Therefore, determining whether a person is an ERISA fiduciary requires a factual inquiry into that individual's authority, control, discretion or responsibility.  *Nieto v. Ecker*, 845 F.2d 868, 870-71 (9th Cir. 1988) (affirming dismissal of claim against attorney, because complaint did not allege that attorney had authority over plan assets).

ERISA generally leaves to the Department of Labor the task of defining "plan assets." "[T]he term "plan assets" means plan assets as defined by such regulations as the Secretary may prescribe . . . ."  29 U.S.C. § 1002 (42).  The regulations provide that "the assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or

**REPORT AND RECOMMENDATION- 24**

amounts that a participant has withheld from his wages by an employer, for contribution to the plan ...." 29 C.F.R. § 2510.3-102(a).  Courts in the Ninth Circuit apply "a twofold functional test as to whether an item in question constitutes an 'asset of the plan': (1) whether the item in question may be used to the benefit (financial or otherwise) of the fiduciary, and (2) whether such use is at the expense of the plan participants or beneficiaries."  *Kayes v. Pacific Lumber Co.,* 51 F.3d 1449, 1466 -1467 (9th Cir. 1995) (citing *Acosta v. Pacific Enterprises*, 950 F.2d at 617).  At the same time, in order for there to be plan assets, there must be an ERISA plan.

It is not clear from the Complaint that Plaintiffs allege a breach of ERISA fiduciary duty claim against Jordan Transformer.  Nonetheless, Plaintiffs argue that Defendants Wallerich, Farrish Johnson, and Jordan Transformer are ERISA fiduciaries, because they exercised authority or control over the management or disposition of "plan assets."  *Response to Motion to Dismiss,* p. 9 (Docket No. 28).  In support of their breach of fiduciary duty claim, Plaintiffs allege as follows:

(1) Attorney for U.S.T. East, Wallerich, and by extension her law firm, Farrish Johnson, acted as an agent on behalf of U.S.T. East with respect to employee benefit plans, and Wallerich's actions "negatively impacted the payment of employee benefits claims." *Complaint*, ¶ 27 (Docket No. 1).

(2)  Wallerich acted as an agent for U.S.T. East with respect to legal and financial issues involving the negotiations, structuring, and closing of the sale of U.S.T. East's business to Jordan Transformer.  *Id.* at ¶ 28.

(3) Wallerich acted as an escrow (using a trust account) to effect the transfer of money incident to the sale by U.S.T. East to Jordan Transformer, all of the net proceeds of which are traceable to funds held or constructively held as assets of the UST Health Plan.  *Id.* at ¶ 29.

(4) Jordan Transformer was on notice of Plaintiffs' claims at the time it purchased U.S.T. East and has since operated substantially the same business as U.S.T. East and has succeeded U.S.T. East as the sponsoring employer of the UST Health Plan.  *Id.* at ¶¶ 31-32.

**REPORT AND RECOMMENDATION- 25**

Plaintiffs further allege that these Defendants breached their ERISA fiduciary duties by "holding the $160,000 of assets of the UST Health Plan and the [Employee Stock Benefit Plan]," *Id.* at ¶¶ 80-81.

These allegations do not support a claim that Wallerich, Farrish Johnson, or Jordan Transformer were fiduciaries with respect to plan assets.  The only plan alleged in the Complaint that is governed by ERISA is the U.S.T. Health Plan.  Plaintiffs argue that the "plan assets" at issue are the "unpaid contributions that were held out of the employees' pay from September 30, 2002 to March 26, 2003." *Response to Motion to Dismiss,* p. 9 (Docket No. 28).  Plaintiffs then argue that these amounts withheld from their paychecks "bolstered the financial position of U.S.T. West, which in turn boosted the amount that was netted ($185,000) from the April 11, 2003 sale of assets to Virginia Transformer. *Id.*  Plaintiffs trace these amounts to U.S.T. East and then, after the sale of U.S.T. East to Jordan Transformer, to the client trust account of Wallerich and Farrish Johnson.  *Id.*  Plaintiffs also argue that Jordan Transformer is a fiduciary as the successor to U.S.T. East and the plan assets over which Jordan Transformer asserted control were the "assets and business once belonging to U.S.T. East . . . the funding source for the self-funded [U.S.T.] Health Plan." *Id.* at pp. 5-6.

These allegations do not support a claim for ERISA breach of fiduciary duty.  Tracing the sums as alleged to the U.S.T. Health Plan or Employee Stock Benefit Plan cannot create liability for Wallerich, Farrish Johnson, or Jordan Transformer as ERISA fiduciaries.  Plaintiffs were employees of U.S.T. West, an entity that closed its doors on March 26, 2003.  *Complaint*, ¶ 52 (Docket No. 1).  According to the Complaint, by the time the sums at issue were received by Wallerich, Farrish Johnson, and Jordan Transformer, the sums had already been withheld

**REPORT AND RECOMMENDATION- 26**

wrongfully by U.S.T. East and were not managed or otherwise treated as ERISA plan assets. Therefore, based on Plaintiffs' allegations, there were no ERISA plan assets for these Defendants to manage for the benefit of Plaintiffs.

Whether the alleged U.S.T. West plans were terminated in accordance with ERISA or not, any existing plans were terminated before Wallerich, Farrish Johnson, and Jordan Transformer asserted any alleged discretion or control over the sums at issue.  Further, Plaintiffs do not argue that Wallerich, Farrish Johnson, or Jordan Transformer were responsible for the management of the funds held by U.S.T. West.  Instead, Plaintiffs have pled that these Defendants performed fiduciary functions related to their relationships with U.S.T. East, the alleged wrongful recipient of U.S.T. West's plan assets.  These relationships do not trigger ERISA duties to U.S.T. West's employees.

In short, Plaintiffs' claims for ERISA breach of fiduciary duty arising from the allegations relevant to Health Care Premium Payments and the Employee Welfare Benefit Plan are untimely.  In addition, the allegations against Defendants Wallerich, Farrish Johnson, and Jordan Transformer do not state a claim for breach of ERISA fiduciary duty as a matter of law.

## D.     Plaintiffs' Claims for Equitable Relief Pursuant to 29 U.S.C. § 1132(a)(3) Are Time-Barred.

Defendants argue that Plaintiffs' claims under 29 U.S.C. § 1132(a)(3) fail as a matter of law, because Plaintiffs' claims for benefits pursuant to 29 U.S.C. § 1232(a)(1)(B) and for breach of fiduciary duty pursuant to 29 U.S.C. 1232(a)(2) provide the exclusive remedy for Plaintiffs' claimed injuries.  *Defendant's Memorandum in Support of Motion to Dismiss*, p. 11 (Docket No. 26-2).  Defendants also argue that the claims fail, because they are time-barred.  *Id.* at 11.

**REPORT AND RECOMMENDATION- 27**

To establish a right to equitable relief under 29 U.S.C. § 1132(a)(3), there must be a breach of fiduciary duty.  "To establish an action for equitable relief under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), the defendant must be an ERISA fiduciary acting in a fiduciary capacity, *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996), and must 'violate . . . ERISA-imposed fiduciary obligations,' *id.* at 506."  *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004).

The Supreme Court has described 29 U.S.C. § 1132(a)(3) as a "catchall provision that acts as a safety net, offering appropriate equitable relief for injuries caused by violations that [29 U.S.C. § 1132] does not elsewhere adequately remedy."  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 221 n.5 (2002) (citation, internal quotations marks, and alteration omitted); *see also Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).  As a catch-all provision, 29 U.S.C. § 1132(a)(3) provides relief not available under 29 U.S.C. §§ 1132(a)(1)(B) or 1132(a)(2).  Thus, compensatory damages are not a form of equitable relief available under 29 U.S.C. § 1132(a)(3).  *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993).  Similarly, an estoppel claim cannot result in a payment of benefits inconsistent with the written plan.  *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992).  Such claims are covered by 29 U.S.C. § 1232(a)(1)(B) as claims for benefits.

In addition, a claim for relief pursuant to 29 U.S.C. § 1132(a)(2) generally inures to the benefit of the ERISA plan, as opposed to the beneficiary.  *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) ("A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than the rights of the

**REPORT AND RECOMMENDATION- 28**

individual beneficiary.").  The catch-all provision of 29 U.S.C. § 1132(a)(3) fills in the gap and

"authorizes lawsuits for individualized equitable relief for breach of fiduciary obligations."

*Varity Corp. v. Howe*, 516 U.S. at 498.

Relying upon a Ninth Circuit case applying this precedent, Defendants argue that a

plaintiff who asserts specific claims under U.S.C. §§ 1132(a)(1)(B) or (a)(2) cannot obtain relief

under 29 U.S.C. § 1332(a)(3).  *See Ford v. MCI Comm'ns Corp. Health & Welfare Plan*, 399

F.3d 1076, 1083 (9th Cir. 2005).  However, a close read of *Ford* shows that the Court first

dismissed the plaintiff's claims against a defendant as a claims administrator or fiduciary before

dismissing the "catch-all" claim and, thus, the lawsuit against that defendant.  The decision

states:

> Ford failed to raise a material question of fact regarding Hartford's liability under
> ERISA, either as a claims administrator or a fiduciary.  Because specific claims
> were asserted [and dismissed] under discrete ERISA provisions, the 'catchall'
> provision is not available as a source of relief.

*Id.* at 1083.

In the instant case, Plaintiffs seek relief under 29 U.S.C. § 1132(a)(3) that is unavailable

under either 29 U.S.C. §§ 1132(a)(1)(B) and (a)(2).  Pursuant to 29 U.S.C. § 1132(a)(3),

Plaintiffs seek the following equitable relief: (1) an accounting of contributions (employee and

employer); (b) a declaration of breach of fiduciary duties; (c) disgorgement and restitution of the

ERISA plans for the losses to them; (d) a constructive trust over the stock incentive plan assets;

and (e) an injunction against Leagjeld, Kampshoff, and Smith from committing further ERISA

violations.  *Complaint*, ¶¶ 85-88 (Docket No.1).  Such equitable relief is not available under 29

U.S.C. § 1132(a)(1)(B), which applies to benefits due under a plan, nor is such relief available

**REPORT AND RECOMMENDATION- 29**

under 29 U.S.C. § 1132(a)(2), which inures to the benefit of the plan.  Therefore, Plaintiffs'

claims pursuant to 29 U.S.C. § 1132(a)(3) are appropriate.

Even though Plaintiffs' claims for equitable relief were appropriately pled, the claims

still fail and Defendants are entitled to judgment as a matter of law.  Because a claim under 29

U.S.C. § 1132(a)(3) is premised upon a breach of fiduciary duty, a court must apply the fiduciary

duty statute of limitations.  Accordingly, for the same reasons that Plaintiffs' breach of fiduciary

duty claims are time-barred, Plaintiffs' claims for equitable relief under 29 U.S.C. § 1132(a)(3)

are also time-barred, except for the claims of Plaintiff Olson.

**D.      Plaintiffs' Allegations Do Not Support a RICO Claim.**

In order to bring a claim under RICO, 18 U.S.C. § 1962, a plaintiff must establish five

essential elements: (1) the conduct (2) of an enterprise (3) through a pattern (4) of a racketeering

activity, (5) that injured plaintiff's business or property.  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S.

479, 496 (1985).  The terms "pattern" and "racketeering activity" are defined by the statute.

"Racketeering activity" is defined as "any act or threat involving" specified state-law crimes

indictable under federal statutes and certain federal "offenses."  29 U.S.C. § 1961(1).  A

"pattern" requires "at least two acts of racketeering activity" within a ten-year period.  29 U.S.C.

§ 1961(5).  The underlying acts of racketeering are referred to as predicate acts or predicates.

*See, e.g., Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004).

Plaintiffs assert the RICO claim against Defendants Leagjeld, Kampshoff, Wallerich, and

Farrish Johnson.  *Complaint*, ¶ 92 (Docket No. 1).  Plaintiffs allege the following predicate acts:

> (1) Kampshoff violated 18 U.S.C. § 664 (theft or embezzlement from an employee
> benefit plan) by withholding from Plaintiffs' pay sums that should have been directed to
> the Employee Stock Benefit Plan and U.S.T. Health Care Plan but were used to benefit
> U.S.T. (*Id.* at ¶¶ 92(a), (b));

**REPORT AND RECOMMENDATION- 30**

(2) Leagjeld violated 18 U.S.C. § 664 (theft or embezzlement from an employee benefit plan) by ignoring Defendants' stock ownership rights under the Employee Stock Benefit Plan and failing to pay valid health claims under the U.S.T. Health Plan when she sold the assets of U.S.T. West and later U.S.T. East (*Id.* at ¶¶ 92(c), (d)); and

(3) Wallerich and by virtue of her being a partner, Farrish Johnson, violated 18 U.S.C. § 1343 (wire fraud) by making written and oral misrepresentations via interstate telephone lines in an effort to thwart Plaintiffs' efforts to pursue and collect settlement funds (*Id.* at ¶¶ 92(e)).

### 1.      Theft or Embezzlement from an Employee Benefit Plan

To support a claim for theft from an employee benefit plan, Plaintiffs must establish the existence of a valid ERISA "welfare benefit plan" or "pension benefit plan."  The statute states:

> Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both.
> As used in this section, the term "any employee welfare benefit plan or employee pension benefit plan" means any employee benefit plan subject to any provision of title I of the Employee Retirement Income Security Act of 1974.

18 U.S.C. § 664.

Because the Employee Stock Benefit Plan is not covered by ERISA, allegations of theft related to the Employee Stock Benefit Plan cannot sustain a claim under the statute.  However, at this stage in the proceedings, the allegations relating to sums withheld from the U.S.T. Health Plan are sufficient to withstand judgment on the pleadings as it does not appear "beyond doubt" that Plaintiffs can prove no set of facts in support of this claim.  *See Conley v. Gibson*, 355 U.S. at 45-46.

**REPORT AND RECOMMENDATION- 31**

## 2.      Wire Fraud

Plaintiffs allege wire fraud, 18 U.S.C. § 1343, against Defendants Wallerich and Farrish

Johnson.  Wire fraud is defined as follows:

> [A]ny scheme or artifice to defraud, or for obtaining money or property by means
> of false or fraudulent pretenses, representations, or promises, transmits or causes
> to be transmitted by means of wire, radio, or television communication in
> interstate or foreign commerce, any writings, signs, signals, pictures, or sounds
> for the purpose of executing such scheme or artifice.

18 U.S.C. § 1343.  "[T]he prosecution need not prove that the scheme was successful or that the

intended victim suffered a loss or that defendant suffered a gain.  The gist of the offense is a

scheme to defraud and the use of interstate communications to further that scheme."  *U.S. v.*

*Louderman*, 576 F.2d 1383, 1387 (9th Cir. 1978) (quoting *U.S. v. O'Malley*, 535 F.2d 589, 592

(10th Cir. 1976)).  "[S]tate law is irrelevant in determining whether a course of conduct is

violative of the wire fraud statute."  *Id.*

"[I]n most wire fraud cases, the scheme to defraud has been an underlying scheme to

obtain tangible property which is furthered by the use of wire communications."  *Id.*  The alleged

scheme must be "reasonably calculated to deceive persons of ordinary prudence and

comprehension."  *Sun Sav. & Loan*, *Ass'n v. Dierdorff*, 825 F.2d 187, 196 (9th Cir. 1987).

Further, "[t]he wire fraud statute is not limited to possessory interests, and can extend to

rights in intangible property."  *U.S. v. Bruchhausen*, 977 F.2d 464, 467 (9th Cir. 1992).

However, the interest at issue must be a cognizable property right under the statute that "had its

origin in the desire to protect individual property rights."  *Id.* (holding government's potential

forfeiture interest is too ethereal to fall within protections of [wire fraud] statute") (citing

*McNally v. United States*, 483 U.S. 350, 358-59, n. 8 (1987)).

**REPORT AND RECOMMENDATION- 32**

In the instant case, Plaintiffs allege that Wallerich misled them by stating that U.S.T. East would not be sold to Jordan Transformer before Plaintiffs' claims had been settled and that Wallerich had offered $100,000 to settle Plaintiffs' claims and then revoked the offer for the stated purpose of closing the sale to Jordan Transformer.  *Complaint*, ¶ 92(e) (Docket No. 1). These allegations do not support a claim of wire fraud, because the alleged property interest is not cognizable under the statute.

### 3.    Pattern of Racketeering Activity.

Deprived of the allegations regarding the Employee Stock Benefit Plan and the claims against Wallerich and Farrish Johnson, Plaintiffs cannot demonstrate the required pattern of racketeering activity.  "In order to prove a pattern of racketeering activity, 'a plaintiff . . . must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'"  *H.J., Inc.*, 492 U.S. at 239 (emphasis in original).  "Evidence of multiple schemes is not required to show a threat of continued criminal activity . . . and . . . proof of a single scheme can be sufficient so long as the predicate acts involved are not isolated or sporadic."  *Turner*, 362 F.3d at 1229 (citing *H.J. Inc.*, 492 U.S. at 240; *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987).  Continuity may refer to "a closed period of repeated conduct" or "past conduct that by its nature projects into the future with a threat of repeition."  *H.J., Inc.*, 492 U.S. at 241.  "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."  *Id.*

In the instant case, the predicate acts that withstand judgment on the pleadings are the claims of embezzlement from the U.S.T. Health Plan.  The allegations supporting these claims begin in February 2003 when Plaintiffs' health care premium payments were allegedly withheld

**REPORT AND RECOMMENDATION- 33**

from their paychecks and extended to September 22, 2004, when U.S.T. East's assets were sold. Plaintiffs allege that sums ear-marked for payment of their premiums and later their related health care claims can be traced from the time they were withheld from Plaintifs' paychecks to their transfer to U.S.T. East, and then onto Jordan Transformer or Wallerich and Farrish Johnson. Plaintiffs allege that these repeated acts "were interrelated with one purpose in mind, to deprive Plaintiffs of a significant piece of their earned compensation and benefits." *Response to Motion for Judgment on the Pleadings*, p. 17 (Docket No. 22).

Nonetheless, the alleged predicate acts are embezzlement from an employee benefit plan, 18 U.S.C. § 664. Any alleged acts in support of the claim took place in a defined period of time when the assets of an employee benefit plan were unlawfully and willfully abstracted or converted to the use of someone other than the supposed beneficiaries of the plan. Although it is alleged that such sums have been withheld from Plaintiffs for a period of years, the actual abstraction or conversion alleged took place in February and March 2003 when Plaintiffs' health care premium payments were withheld from their paychecks. Such activity cannot constitute a pattern of racketeering activity as a matter of law, and Plaintiffs' RICO claims cannot survive Defendants' motion for judgment on the pleadings.

## V.

### CONCLUSION

Recognizing that the standard for judgment on the pleadings is high, it is recommended that the district court grant Defendants' motion for judgment on the pleadings as follows: (1) the Employee Stock Benefit Plan is not covered by ERISA; (2) Plaintiffs' breach-of-fiduciary duty claims under 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1132(a) (3) are time-barred; (3) Plaintiffs'

**REPORT AND RECOMMENDATION- 34**

allegations do not support breach of ERISA fiduciary duty claims against Wallerich, Farrish

Johnson, and Jordan Transformer; and (4) Plaintiffs' allegations do not support a claim under

RICO as a matter of law.

## VI.

## RECOMMENDATION

In accordance with the foregoing, it is recommended that Defendants' Motion for

Judgment on the Pleadings be GRANTED in part and DENIED in part.

1.      The motion should be granted with regard to the following:

  a.      Plaintiffs' ERISA claims based upon the alleged Employee Stock

   Benefit Plan should be dismissed;

  b.      Plaintiffs' breach of ERISA fiduciary duty claims should be

   dismissed, including claims for relief under 29 U.S.C.

   §§ 1132(a)(2) and (3), as they are time-barred;

  c.      Plaintiffs' claims of breach of ERISA fiduciary duty against

   Defendants Wallerich, Farrish Johnson, and Jordan Transformer

   should be dismissed for failure to state a claim; and

  d.      Plaintiffs' RICO claims are dismissed for failure to state a claim.

2      The motion should be denied with regard to the following:

  a.      Plaintiffs' claims for benefits pursuant to 29 U.S.C.

   § 1132(a)(1)(B) based upon the Health Care Premium Payment

   allegations.

**REPORT AND RECOMMENDATION- 35**

b.    Plaintiff David Olson's claims for breach of fiduciary duty based

upon the Health Care Premium Payment allegations.



DATED:  **March 11, 2008**.

Honorable Larry M. Boyle
U. S. Magistrate Judge

**REPORT AND RECOMMENDATION- 36**